Michael Zoldan; AZ Bar No. 028128
**ZOLDAN LAW GROUP, PLLC**
14500 N. Northsight Blvd., Suite 133
Scottsdale, AZ 85260
Tel & Fax: 480.442.3410
MZoldan@zoldangroup.com

Attorneys for Plaintiff
Markel Mayers

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| **Markel Mayers**, an Arizona resident,<br><br>Plaintiff,<br><br>v.<br><br>**The Boeing Company,** a Delaware corporation,<br><br>Defendant. | **Case No.**<br><br>**VERIFIED COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Markel Mayers ("**Plaintiff**"), for his Verified Complaint against Defendant The Boeing Company ("**Defendant**") hereby alleges as follows:

### PARTIES

1. Plaintiff is, and at all times relevant hereto was a resident of Maricopa County, Arizona.

2. Upon information and belief, Defendant The Boeing Company is a Delaware corporation with its principal place of business in Chicago, Illinois.

### JURISDICTION AND VENUE

3. All acts complained herein occurred in Maricopa County, Arizona, and this Court has jurisdiction over the parties and subject matter set forth in this Complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

4. This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 in that the claims set forth in this Complaint arise under federal law.

5. The employment practices alleged to be unlawful were committed within, and had their primary effect in, the jurisdiction of the United States District Court for the District of Arizona.

6. Plaintiff was, at all relevant times, an employee of Defendant.

7. At all relevant times, Defendant has continuously been an employer, employing fifteen or more employees within the meaning of Title VII.

8. Plaintiff has exhausted all administrative and statutory prerequisites necessary to commence this action, and therefore jurisdiction is proper.

## FACTUAL ALLEGATIONS

9. Mayers commenced employment with Defendant, on or about September 18, 2014 as a Composite Tech. In this role, Mayers fabricated parts for Boeing's 787 aircraft carriers.

10. Mayers, who is African American, reported to a Caucasian supervisor, Marvin Csader.

11. During the first several months of Mayers' employment, Csader consistently told him that he needed to raise his performance level.

12. The performance measures for Mayers' department are calculated based on the amount of time Boeing allots for the completion of a task divided by the amount of time it actually takes for the employee to complete the task. For example, if Boeing allots 8.5 hours to complete a task and an employee takes 4.5 hours, the performance metric for

that task equals 1.89.

13. For Mayers' work group, any performance measure that is 1.00 or higher is considered meeting or exceeding performance.

14. In 2014, Mayers finished the year with a performance level of over 1.00. Csader rated Mayers a "3" for meeting performance and authorized a raise of 74 cents per hour. When Mayers challenged the amount of his raise, Csader told him that he could not give him more but would take care of him the following year.

15. In 2015, Mayers continued to increase his performance numbers. Mayers again finished the year with a performance level of over 1.00 but was provided a rating of "3" and a raise of 52 cents. Csader again told Mayers that he could not give him a better raise, but he would take care of him the following year.

16. Although Mayers finished 2016 with four scores of exceeding expectations, Csader only gave him an 81 cent raise and again informed him that his hands were tied with respect to the raise amount.

17. Mayers later learned that the raises he earned were lower than almost all of his peers.

18. Despite Mayers' exemplary performance, Csader treated him less favorably than employees in the department that were not black.

19. Csader picked up tools and brought them to white employees but offered no similar courtesy to Mayers. Csader gave preferential scheduling accommodations to white employees, and he enforced Company policies against Mayers in a more punitive manner than he did with Mayers' white peers.

20. During Mayers' tenure working as Csader's subordinate, he was subjected to

multiple offensive and derogatory comments related to his race. The comments made Mayers feel uncomfortable and were racially hostile and inappropriate. The comments were either made directly by Csader or otherwise condoned by him.

21. On one occasion a white employee made racist jokes to a black contractor who worked on Mayers' team. The white employee called the black contractor the "n word" and would often joke about the color of his skin. The white employee came into work to cut breather material, which is white in color, and put it into the black contractor's jacket and told the contractor to "get to work cotton boy". Csader witnessed the entire incident and did not intervene or otherwise discourage the behavior. The same white employee told Csader to instruct the black contractor to wear a shirt to work because he was wearing a black shirt – an attempt to make fun of the fact that shirt matched the skin color of the contractor and thus appeared that he wasn't wearing a shirt. Csader was present and laughed at the joke along with the white employee. Mayers was also present during the incident and reported his observations to Boeing's EEO office. Ultimately, the white employee was suspended for three days while Csader did not receive any discipline.

22. At or around the same time of this investigation, Mayers learned that Csader had a personal relationship with someone in Boeing's human resources department and that Csader proclaimed himself to be "untouchable".

23. In February 2017, when a co-worker of Mayers requested time off for jury duty, Mayers jokingly told Csader that he too wanted time off for jury duty. In response to Mayers' joke, Csader told Mayers "yeah right the only thing you will ever get is an arrest warrant". Mayers understood Csader's comment to be racially motivated.

24. Later that week, several Chandler police officers were observed at Boeing's

worksite. Csader asked Mayers why the police were there and Mayers responded that he did not know. In response, Csader said to Mayers in an accusatory tone that if he found out that Mayers was lying they would be having another conversation in his office.

25. Csader had no factual basis to suggest that Mayers had any reason to be involved with a police investigation. Csader did not ask any other employee why the police were there. Mayers understood Csader's comment to be racially motivated.

26. Csader's comment was made in the presence of Craig Dyke, a management level employee, who reported the matter to Human Resources Generalist, Tara Basso.

27. Basso spoke with Mayers the following day and offered to speak with Csader about his offensive comment but maintained to Mayers that Csader was probably kidding. Basso further told Mayers that he could file a complaint, but if Csader was kidding all that could be done about the situation would be to merely speak with Csader. Mayers told Basso that he did not find Csader's comments funny, and they were very offensive to him. Basso responded by laughing and telling Mayers that she would give Csader a slap on the hand and tell him to stop and coach him to say that he was just joking.

28. Later that month, Dyke was showing Mayers pictures of his niece who plays high school basketball, and Csader walked by and said to Mayers, "what are you doing, looking for another baby mama? I know how you guys do" and then walked away laughing. Mayers understood Csader's comment to be racially motivated.

29. Mayers confronted Csader and told him that he did not appreciate his comments. Csader told Mayers that he liked to pick on Mayers because Mayers was his favorite. Csader also told Mayers that his comments "weren't that bad".

30. Still in February 2017, Csader offered a lunch party for the work group.

One employee suggested Mexican food. Mayers said that he was tired of pizza. Csader then looked at Mayers and said aloud, "bro, I'm not going to order you fried chicken and watermelon." Csader's comment evoked laughter in front of the entire team, which offended and embarrassed Mayers.

31. Due to the offensive nature of the comments, Mayers filed a complaint with Boeing's EEO office.

32. Mayers also complained that he received lower scores from Csader than his white peers in connection with his 2016 Performance Management rating. Csader told Mayers that he received lower scores because he was not in school, yet none of Mayers' Caucasian and Hispanic peers received a deduction for not being in school.

33. Upon information and belief, Mayers received low PM scores compared to his peers – of which he was the only African American out of twenty – in order to manufacture a reason to terminate or nominate Mayers for layoff.

34. In early 2017, Csader denied a request from Mayers for leave even though Mayers' request followed Boeing's internal leave request policy.

35. Upon information and belief, Csader's denial of Mayers' request was in retaliation for the EEO complaint Mayers filed.

36. Upon information and belief, Csader permitted similar time off requests for Mayers' non-African American peers.

37. On or around April 13, 2017, Mayers informed EEO investigator Robert Garcia that Csader was approaching employees about the EEO complaint Mayers filed. Mayers provided Mr. Garcia with evidence that Csader was attempting to manipulate the investigation. Mayers further requested that he be removed from Csader's team because it

amounted to a hostile work environment, and he was stressed out because the investigation was not being kept confidential and the entire team knew and was openly discussing Mayers' complaints.

38. Defendant ignored or otherwise refused Mayers' transfer request.

39. On June 30, 2017, Csader informed Mayers that he could work overtime because the division was behind on their production of the brace component of the aircraft.

40. Mayers therefore worked overtime from July 1, 2017 through July 3, 2017.

41. Mayers attempted taking vacation on July 3, 2017, after Csader already approved the option.

42. On July 7, 2017, Csader denied Mayers' vacation time explaining that he had to use his overtime hours to cover his time off on July 3, 2017.

43. Upon information and belief, Mayers was the only person on his team that was not allowed to use vacation time for July 3, 2017.

44. In addition to providing Mayers with low PM scores and refusing vacation time, Csader retaliated and continued to discriminate against Mayers. For example, Csader stopped communicating with Mayers entirely. Csader refused to greet Mayers during meetings while offering the rest of the team greetings and pleasantries. In order to avoid talking to Mayers about work related necessities, Csader would instead speak to a coworker and instruct him to relay the information to Mayers.

45. Mayers complained about Csader's retaliatory conduct in July 2017 to Boeing's EEO office. Mayers again requested to be transferred from Csader's team but was informed that his case against Csader was closed so there was nothing that could be done.

46. Upon information and belief, Defendant did not take remedial action in connection with Mayers' retaliation complaint.

47. On July 29, 2017, Mayers was written up and given a one-day suspension by Csader. The suspension related to an absence Mayers took because his daughter was sick and he could not send her to school. Mayers discussed the situation with Csader who advised him that it was okay and that Mayers should look after his family. Mayers was given the suspension despite having vacation time that he could have used for the absence.

48. On September 6, 2017, Mayers filed a Charge of Discrimination with the EEOC.

49. On February 21, 2018, Mayers was terminated from Boeing for alleged violations of attendance rules.

50. Mayers explained to Basso that he requested FMLA to care for his wife for the absences in question. In response, however, Basso laughed at Mayers' explanation as she did with his complaints about Csader.

51. Ultimately, Mayers was terminated in retaliation for the complaints he made as well has the discrimination he suffered from Csader and Boeing.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

52. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

53. Plaintiff belongs to a protected class in that he is African American.

54. Plaintiff was qualified for his position with Defendant.

55. Other employees outside of Plaintiff's protected class were treated more favorably.

56. Plaintiff was subject to a hostile work environment on the basis of his race.

57. The conduct described above was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

58. Defendant knew or should have known of the harassment to which Plaintiff was subjected and wholly failed to take proper remedial action.

59. Because of his race, Plaintiff was subjected to adverse employment actions including, *inter alia*, termination.

60. As a result, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

61. Plaintiff reasserts and realleges each and every paragraph, *supra*, as if restated herein.

62. It shall be an unlawful employment practice for an employer to discriminate against an employee because he has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.

63. Plaintiff made numerous complaints about discrimination to Defendant's internal EEO office, HR department, and the EEOC.

64. In response to his complaints, Plaintiff was subjected to adverse employment actions including, *inter alia*, termination.

65. As a result, Plaintiff was harmed in an amount to be proven at trial.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court order such relief as is necessary to make him whole, including, without limitation:

A. Declaring the acts and practices complained of herein are in violation of Title VII of the Civil Rights Act;

B. An award of compensatory damages for all counts in an amount to be proven at trial;

C. An award of punitive damages in an amount to be proven at trial;

D. An award of back pay and front pay;

E. Pre- and post-judgment interest;

F. Reasonable attorneys' fees, costs and other expenses;

G. For such other relief this Court deems just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

RESPECTFULLY SUBMITTED on August 6, 2021.

**ZOLDAN LAW GROUP, PLLC**

By: /s/ Michael Zoldan
 14500 N. Northsight Blvd., Suite 133
 Scottsdale, AZ 85260
 Attorneys for Plaintiff

## **VERIFICATION**

Plaintiff Markel Mayers declares under penalty of perjury that he has read the foregoing Verified Complaint and is familiar with the contents thereof. The matters asserted therein are true and based on his personal knowledge, except as to those matters stated upon information and belief, and as to those matters, he believes them to be true.

_____
Markel Mayers